IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2022 DEC 21  P 12: 50

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Dr. Kasha L. Gordon

_____
PLAINTIFF

v.                                    CASE ACTION NO.: 3:22-CV-0708-RAH-JTA

Auburn University                     JURY DEMAND (MARK ONE)

_____            ☒ YES      ☐ NO
DEFENDANT

## EEOC COMPLAINT

1. Plaintiff resides at  120 Valleys Edge, Wetumpka, AL 36093

2. Defendant(s)' name(s)  Auburn University

   Location of principal office(s) of the named defendant(s)
   1550 E. Glenn Ave. Auburn, AL 36830

   Nature of defendant(s)' business  University/ Higher Education

   Approximate number of individuals employed by defendant(s)  13,000+

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employement discrimination. Jurisdiction is specifically conferred on the Court by 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 §2000e-5(g).

4. The acts complained of in this suit concern:

   1. ☐ Failure to employ me.
   2. ☒ Termination of my employment.
   3. ☐ Failure to promote me.
   4. ☐ Other acts as specified below: _____

5. Plaintiff is:
   A. ___ Presently employed by the defendant.
   ___ Not presently employed by the defendant. The dates of employement were March 7, 2022- June 3, 2022 Employment was terminated because:

   (1) **X** Plaintiff was discharged.
   (2) ___ Plaintiff was laid off.
   (3) ___ Plaintiff left job voluntarily.

6. Defendant(s)' conduct is discriminatory with respect to the following:

   A. ___ My race.
   B. ___ My religion.
   C. ___ My sex.
   D. ___ My national origin.
   E. **X** Other, as specified below: pregnancy, race, retaliation

7. The name(s), race, sex, and the position or title of the individual(s) who allegedly discriminated against me during the period of my employment with the defendant company is (are) Karla McCormick, caucasian, female, Associate VP of Human Resources Linda Maxwell-Evans, Black, female, Exec. Director of Employee Relations, HR Betty Watson, Black, female, Specialist, Employee Relations, Human Resources

8. The alleged discrimination occurred on or about March 2022- June 2022.

9. The nature of my complaint, i.e., the manner in which the individual(s) named above discriminated against me in terms of the conditions of my employment, is as follows:

   Please see the nature of my complaint on the attached document.

10. The alleged illegal activity took place at Auburn University, 1550 E. Glenn Ave., Auburn, AL

11. I filed charges with the Equal Employment Opportunity Commission regarding defendant(s)' alleged discriminatory conduct on or about __9/8/2022__.
    I have attached a copy of the Notice-of-Right-to-Sue letter issued by the Equal Employment Opportunity Commission. The letter was received by me on __9/22/2022__.

12. I seek the following relief:

    A. __X__ Recovery of back pay.
    B. __X__ Reinstatement to my former job, and any other relief as may be appropriate, including injunctive orders, damages, costs, and attorneys fees.

Date: __December 20, 2022__

_Kashyof-Gordon_
Signature of Plaintiff

__120 Valleys Edge__
__Wetumoka, AL 36093__
__(754) 235-6317__
Address & Telephone Number of Plaintiff

Kasha L. Gordon
kasha@frontrunnerleadership.com
(754) 235-6317

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA- EEOC COMPLAINT
## SECTION 9 (NATURE OF COMPLAINT) RESPONSE

1. PREGNANCY DISCRIMINATION- On May 2nd I had a conversation with my supervisor, Karla McCormick (herein after referred to as: my supervisor), regarding questions around the university's parental leave policy, and the disparities that it creates for the impacted employees. And at that time, she visibly became upset, and began to subsequently use words and actions (emails and conversations) that created a hostile work environment. She continued to bring up my probationary period over the next few weeks that followed, and made inquiries into other areas of HR about my when my probationary period would expire, and began to consult with Employee Relations to plan for my exit. Additionally, she said: I'm not going to treat someone having a baby better than someone with cancer; if they have to wait to use their leave, so would a pregnant person. If this is about you, you need to just say so. I told her that it was, but also, I wanted to be able to answer questions for the other new employees that I served through my role leading New Employee Orientation.

2. RACE: On my first day of work, Karla and I had a 1:1 meeting, and as a part of that meeting we discussed the university's creed, which the school holds in very high regard. I discussed with her a portion of the creed that does not support the African-American/Black community of Auburn students or employees, and discussed ways that we could make the process more equitable. Karla asked me to take on the role of supporting diversity equity and inclusion v(DE&I) initiatives for the staff across campus through my role. She also asked me to reach out to the university DE&I office to form a partnership as well. Once I actually began to partner with the DE&I office, as well as make recommendations to Karla for approval for the DEI considerations/programs/trainings that I wanted to implement,

including discussing the initiatives that we could offer through the new employee orientation, Karla began to shut down the ideas, she refused to approve them, which made it more challenging to complete my work. And, weeks later, on May 2nd, she told me that she was upset that I contacted the DE&I office, and I was over-stepping my role. Karla continued to create a hostile work environment, and would speak to others in the department about me and bring false accusations to me without giving me the opportunity to refute them. She continued to bring up my probationary period over the next few weeks that followed and plan my termination.

3. RETALIATION: After the May 2nd meeting with Karla, because she became visibly upset, and her subsequent communications were brash and unprofessional of a supervisor, so I asked Employee Relations to provide a neutral presence at my next meeting with Karla, and subsequent meetings as needed. I quickly discovered that Employee Relations (ER) was not providing neutral guidance. The executive director of ER, Linda Maxwell-Evans, also reports to Karla, as did I, and she was not willing to file a complaint against her for me. I requested the process for filing a complaint, and the policy was never sent to me. Linda told me that I could not file a grievance in my probationary period, and if I filed a complaint, it would have got go to Karla's supervisor, the VP of Business and Finance, and they wold probably just fire me, so I needed to think carefully about what I was doing (ultimately I was fired). I reached out again to Employee Relations, and asked them for all of the available solutions, and told them that I was not being helped, and that my treatment was fair or going to result in an equitable, fair performance evaluation. I asked her why I would be fired because I needed to file a complaint because I was being wronged, I was not in trouble for any work performance. Additionally, when I filed for unemployment with the State, I received notice that Auburn reported to them that my termination was for failure to complete my job duties, which was both untrue and never told to me while employed. My work was always completed in a timely, thorough manner.

4. RETALIATORY TERMINATION: During the weeks from May 2nd-June 1st, I received pressure from the compliance office to have conversations related to my external employment (Front Runner Leadership Consulting, LLC). I confirmed with them that I had already disclosed my work activities at the beginning of my employment, and also, was interviewed by one of the AU attorneys as a follow-up, and I did not have additional information to disclose. Their office tried to get me to sign an additional contract giving oversight to Karla to monitor my business activities, and I let them know that I kept all business resources separate, and any questions that Karla had, she could already ask me as my supervisor with out that additional contract. One June 1st, 2 investigators from the Auburn Audit and Compliance office went into my supervisor's office, then came to my office unannounced. They said they received an anonymous tip from their hotline concerning me, and when I told them that we all needed to schedule a mutually agreeable time, because I was currently in a meeting, they went back to my supervisor's office to speak to her and tried mot convey that I would not cooperate, although I told them if they emailed me their questions, I would answer them in a subsequent meeting with my attorney. Afterwards, my supervisor emailed me and told me she wanted to meet at 4 o'clock that same day. At that meeting, she called the chief of security for the campus to the meeting (who subsequently followed me to my car with another police officer), and placed me on administrative leave for 2 days (Thursday and Friday- June 2nd and 3rd), after which time I would be terminated (Friday June 3rd) without cause other than saying I was not a good fit for the university. 5. Additionally, after being terminated in June 2022, in September 2022, I received notice from the Alabama Ethics Commission that Auburn University reported an alleged ethics breach. During my employment, Karla McCormick never spoke with me directly about any concerns that she had related to my business. This allegation is a direct attempt to try to target my personal company, and bring unwarranted criminal charges, after being terminated without cause.